UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES SMALLS,

                          Plaintiff,

            v.

NEW YORK CITY EMPLOYEES'
RETIREMENT SYSTEM (NYCERS),
MELANIE WHINNERY and SCOTT
STRINGER,

                          Defendants.

18 Civ. 5428 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff James Smalls, proceeding *pro se*, brings suit against the New York City Employees' Retirement System ("NYCERS") to redress a temporary suspension of his pension benefits. Specifically, on September 14, 2017, NYCERS sent a letter to Plaintiff alleging that there was a deficit in his Member Contribution Accumulation Fund ("MCAF"), and that this deficit could lead to suspension of his pension payments. Plaintiff failed to pay the requested amount to make up for the deficit, and his payments were suspended. After a back and forth between Plaintiff and NYCERS regarding a way to offset the deficit, Plaintiff's payments resumed in May 2018. Thereafter, Plaintiff brought this lawsuit against NYCERS, NYCERS Executive Director Melanie Whinnery, and City Comptroller Scott M. Stringer (collectively, "Defendants"), alleging that the temporary suspension constituted a violation of his due process rights, a breach of contract, and a breach of fiduciary duty.

Defendants have moved to dismiss all claims. For the reasons set forth below, Defendants' motion is denied with respect to Plaintiff's procedural due

process and breach of contract claims against NYCERS, and granted with respect to the breach of fiduciary duty claim and with respect to all claims against the individual Defendants.

## BACKGROUND[1]

### A.    Factual Background

### 1.    Plaintiff Receives Notification of Issues with His Pension Account

Plaintiff was a New York City employee who retired in 2017.  (*See* Am. Compl. § 2 ¶ 1).  On September 14, 2017, four months into his retirement, Plaintiff received a letter from NYCERS notifying him that there was a deficit of $3,455.03 in his MCAF "and an outstanding pension loan at retirement that exceeded 75% of the amount required in your MCAF."  (*Id.*; NYCERS 9/14 Letter).  The letter noted that, legally, an outstanding pension loan could not

---

[1]    The Court draws the facts in this section from the Amended Complaint ("Am. Compl."). (Dkt. #3).  Certain other facts are drawn from Plaintiff's opposition papers.  (Dkt. #28). *See Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").  The Court also relies on certain exhibits provided in the Declaration of Elizabeth J. Kim in Support of Defendants' Motion to Dismiss.  (Dkt. #23):  Exhibit B is NYCERS's September 14, 2017 letter to Plaintiff ("NYCERS 9/14 Letter"); Exhibit C is Plaintiff's March 31, 2018 email to Melanie Whinnery ("Whinnery 3/31 Email"); Exhibit D is NYCERS's April 27, 2018 letter to Plaintiff ("NYCERS 4/27 Letter"); and Exhibit E is an affidavit signed by Plaintiff ("Plaintiff 5/7 Affidavit").  Each of these documents is specifically referenced in Plaintiff's Amended Complaint and, therefore, can be considered by the Court.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

For ease of reference, the Court refers to the Memorandum of Law in Support of State Defendant's Motion to Dismiss the Amended Complaint as "Def. Br." (Dkt. #24); to Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #25); and to the Reply Memorandum of Law in Support of State Defendant's Motion to Dismiss the Amended Complaint as "Def. Reply" (Dkt. #26).

exceed 75% of the MCAF.  (NYCERS 9/14 Letter).  To rectify the deficit, Plaintiff was told that he had to pay the full amount of $3,455.03.  (*Id.*).  The letter also highlighted that if Plaintiff failed to pay the full amount within 20 days of the date of the letter, his advance pension payments would be suspended.  (*Id.*).  The letter advised Plaintiff to contact a Call Center or visit a Customer Service Center if he required further assistance.  (*Id.*).

### 2. Plaintiff's Pension Payments Are Suspended

Plaintiff did not make the $3,455.03 payment, and his pension payments were suspended in November 2017.  (Am. Compl. § 5 ¶ 1).  Plaintiff alleges that NYCERS withheld an additional $1,231.81, for a total amount withheld of $4,686.84.  (*Id.*).  As a result, Plaintiff was deprived of a source of income in retirement, and was left to rely on his Social Security benefits.  (*Id.* at § 5 ¶ 2).  On March 31, 2018, Plaintiff contacted Whinnery by email requesting that the $3,455.03 he allegedly owed be "offset" from the $4,686.84 and that he be refunded the difference.  (*Id.*; Whinnery 3/31 Email).  Plaintiff asked that NYCERS then resume his monthly payments at $781.14.  (*Id.*).

On April 17, 2018, Plaintiff received a letter from NYCERS, which informed him that that he would receive his "monthly pension payment into your bank account … assuming there are no technical problems."  (Am. Compl. § 5 ¶ 2).  Plaintiff did not receive the pension payment.  (*Id.*).  On April 27, 2018, Plaintiff received another letter from NYCERS that stated that it would accept Plaintiff's suggested resolution, provided he signed an affidavit authorizing NYCERS to offset his deficit.  (*Id.* at § 5 ¶ 4; NYCERS 4/27 Letter).

### 3. The Resumption of Plaintiff's Pension Payments

On May 4, 2018, Plaintiff spoke with a representative from NYCERS by phone, notifying them that he had not received his pension payment. (Am. Compl. § 5 ¶ 5). The representative told Plaintiff that he needed to authorize NYCERS to offset the alleged deficit in order to have his pension payments resume. (*Id.*). On May 7, 2018, Plaintiff signed the affidavit authorizing the NYCERS to offset the deficit with withheld pension funds, and he personally delivered the document to NYCERS. (*Id.*; Plaintiff 5/7 Affidavit). Plaintiff states that he included the words "without prejudice" on the document to preserve his right to sue. (Am. Compl. § 5 ¶ 5).

On May 10, 2018, Plaintiff received a letter stating that his account was no longer suspended. (Am. Compl. § 5 ¶ 6). The letter also included two pension checks for $781.14 each, or $1,562.28 in total. (*Id.* at § 5 ¶ 6). The checks that Plaintiff received to restart his pension payments were dated for February 28, 2018, and March 31, 2018. (*Id.*). Plaintiff states that NYCERS misrepresented these payments by stating on his 2017 Form 1099-R that he had received pension payments on November 30, 2017, and December 31, 2018, at which time Plaintiff's pension payments were suspended. (*Id.* at § 5 ¶¶ 7, 8). Plaintiff also states that NYCERS showed him that "a payment was made by Electronic Fund Transfer (EFT) to [his] T.D. Bank checking account" on April 30, 2018. (*Id.* at § 5 ¶ 9). However, Plaintiff alleges that his bank advised him on a message dated on May 5, 2018, that the transfer from NYCERS did not occur on that date. (*Id.*). On May 31, 2018, NYCERS

deposited $3,124.56 into Plaintiff's checking account, rather than the $781.14 monthly payment that he expected.  (*Id.* at § 5 ¶ 14).

## B.    Procedural Background

Plaintiff filed this action on June 15, 2018.  (Dkt. #1).  On June 26, 2018, Plaintiff filed the Amended Complaint.  (Dkt. #3).  In it, Plaintiff asserts three principal claims: violation of his right to due process under the Fourteenth Amendment to the Federal Constitution and Article I, Section 6 of the New York Constitution, breach of contract, and breach of fiduciary duty. (*See* Am. Compl. §§ 1, 3, 4).  To the extent that Plaintiff brings claims against Defendants for violation of his federal constitutional rights, the Court construes these claims as brought under 42 U.S.C. § 1983.[2]

On October 4, 2018, the Court held a pre-motion conference and granted Defendants leave to move to dismiss.  (Dkt. #19).  On November 15, 2018, Defendants filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (Dkt. #22-24).  On December 10, 2018, Plaintiff filed his

---

[2]    Section 1983 provides an individual the right to sue state government employees and others acting "under color of state law" for civil rights violations.  42 U.S.C. § 1983. Although Plaintiff does not invoke the statute, he brings claims for violation of his constitutional rights against persons acting under color of state law.  "NYCERS is a New York City administrative agency which qualifies as a 'person' acting 'under color' of state law."  *Campo* v. *New York City Employees' Ret. Sys.*, 843 F.2d 96, 99 (2d Cir. 1988).  The Court construes Plaintiff's due process claims as a Section 1983 claim against Defendants.  *See Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal citation and quotation marks omitted)); *see generally McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156-58 (2d Cir. 2017).

Also in the Amended Complaint, Plaintiff invokes several criminal statutes, such as the Hobbs Act and the New York Penal Law.  (*See* Am. Compl. Injuries).  These criminal statutes do not provide civil rights of action, and the Court does not address them further in this Opinion.

opposition to the claim (Dkt. #25), and on January 22, 2019, Defendants filed their reply (Dkt. #26).   The motion is fully briefed and ripe for decision.

## DISCUSSION

### A.    Motions to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings

6

must be construed as to do justice."). To survive a Rule 12(b)(6) motion to dismiss, however, a *pro se* plaintiff's factual allegations must be at least "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Indeed, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## B. Plaintiff's Has Adequately Stated a Claim That NYCERS Deprived Him of Property Without Due Process of Law

### 1. Applicable Law

"A procedural due process claim is composed of two elements: [i] the existence of a property or liberty interest that was deprived and [ii] deprivation of that interest without due process." *Bryant* v. *N.Y.S. Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). To determine whether the procedures provided satisfy the requirements of due process, the Court must weigh various factors:

> [i] the nature of the private and state interests involved[;] [ii] the extent of the risk that without a hearing the plaintiff might erroneously be deprived of property and the value of a prompt hearing as a safeguard against that risk; [iii] whether the state has a reasonable opportunity to provide a hearing before the deprivation occurs[;] and [iv] the extent of the administrative burden on the state of being required to provide a formal rather than an informal hearing.

*Signet Constr. Corp.* v. *Borg*, 775 F.2d 486, 491 (2d Cir. 1985) (citing *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976)); *accord Nnebe* v. *Daus,* — F.3d —, No. 18-1254-cv, 2019 WL 3242028, at *10 (2d Cir. July 19, 2019).

## 2. Analysis

### a. Plaintiff Held a Property Interest in His Continued Pension Payments

Plaintiff held a protected property interest in his continued pension payments. Defendants do not seriously contest this point and assume it for the purposes of their motion. (Def. Br. 6). On this subject, the case law in this District is clear:

> There is little question that plaintiff's right to continued pension payments is a property right protected by the due process clause of the Fourteenth Amendment. *See, e.g., Russell* v. *Dunston*, 896 F.2d 664, 669 (2d Cir. 1990) (holding that state disability retirement benefits are a constitutionally protected property interest); *Winston* v. *City of New York*, 759 F.2d 242, 247-49 (2d Cir. 1985) (holding that municipal employee retirement benefits are protected); *Weaver* v. *New York City Employees' Retirement System*, 717 F. Supp. 1039, 1043 (S.D.N.Y. 1989) (same). This conclusion is fully supported by state law. Article 5, section 7 of the New York State Constitution provides that: "[M]embership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship,

8

> the benefits of which shall not be impaired." *See also*
> *Weaver*, 717 F. Supp. at 1043 and cases cited therein.

*Ortiz* v. *Regan*, 749 F. Supp. 1254, 1258 (S.D.N.Y. 1990). Accordingly, Plaintiff

has stated a claim that he held a protected property right to his continued

pension payments and suffered a deprivation for the months in which he

received no payment. The Court must assess the procedures by which the City

deprived him of this property and their adequacy under the Constitution.

Defendants point to two procedures, which they state demonstrate the

required procedural safeguards: (i) the pre-deprivation letter to Plaintiff; and

(ii) the availability of a post-deprivation Article 78 proceeding in New York State

Court. The Court addresses each in turn.

### b.   NYCERS Provided Plaintiff Adequate Pre-Deprivation Notice and an Opportunity to Be Heard

Courts have held that due process requires NYCERS to notify individuals

prior to the termination or reduction of their pension pensions. *See Ortiz,* 749

F. Supp. at 1260 (finding that plaintiff stated a claim for deprivation of property

without due process where she was never told that her benefits would be

terminated prior to their suspension); *see also King* v. *N.Y.C. Emp. Ret. Sys.*,

212 F. Supp. 3d 371, 403 (E.D.N.Y. 2016) ("The notice provided to King is

equivalent to the absence of notice in *Ortiz*. Like the plaintiff in *Ortiz*, King

could not contest NYCERS's decision prior to the termination of his benefits."

(internal citations omitted)). However, the level of notice that the constitution

requires for such a deprivation has not been definitively established. In *Minima*

v. *New York City Employees' Retirement System*, the court held that where a

plaintiff "was informed multiple times of NYCERS's intent to suspend his pension benefits, was told precisely why his benefits were about to be suspended, and was given an opportunity to provide NYCERS with the documents required to avoid suspension of his benefits[,]" no due process violation occurred. No. 11 Civ. 2191 (CBA) (SMG), 2012 WL 4049822, at *7 (E.D.N.Y. Aug. 17, 2012), *report and recommendation adopted*, No. 11 Civ. 2191 (CBA), 2012 WL 4049978 (E.D.N.Y. Sept. 13, 2012).

In this case, Plaintiff received notice similar to that in *Minima.* On September 14, 2017, NYCERS informed Plaintiff that his benefits would be suspended, when his benefits would be suspended, why his benefits would be suspended, and how he could remedy the deficit. (NYCERS 9/14 Letter). Plaintiff was also provided a telephone number and the address of a service center to which he could bring questions or seek assistance. (*Id.*).

The Court finds that this letter provided an adequate pre-deprivation notice to Plaintiff regarding his benefits. The letter provided Plaintiff the relevant information about his pension suspension and a mechanism to remedy the deficit; it also invited further discussion if Plaintiff wished to question this decision. This suspension was based purely on Plaintiff hitting a numeric threshold of outstanding loans that necessitated his pension suspension. (*See* NYCERS 9/14 Letter). To require a pre-deprivation formal hearing in such a case would impose major administrative costs in a situation without seeming to substantially reduce the risk of erroneous deprivations. *See DeMasi* v. *Benefico*, 567 F. Supp. 2d 449, 456 (S.D.N.Y. 2008) (declining to

require a hearing for the suspension of certain disability benefits, where the court could "not conceive of any other procedures that would further safeguard against the risk of erroneous deprivation of benefits while simultaneously giving proper consideration to the administrative burden on the state if it were required to provide a more formal hearing in every such instance").

Plaintiff responds by asserting that he was entitled to a pre-deprivation hearing on the basis of Section 1046 of the New York City Administrative Procedure Act. (Pl. Opp. 5-6 (citing New York City Charter § 1046)). However, as Defendants point out, this section of the New York Code is only applicable in cases in which an evidentiary hearing is already required; it does not create freestanding obligations for hearings. (Def. Reply 3-4 (citing Report of the New York City Charter Revision Commission (December 1986-November 1988), Volume Two, Section-by-Section Analysis of Charter Revisions (April 1989)). Plaintiff points to no case law or statute that requires an evidentiary hearing prior to the deprivation of pension benefits, and the Court cannot conclude that one exists. The Court now turns to Article 78 hearings and the post-deprivation remedies provided to Plaintiff.

### c. NYCERS's Failure to Provide Plaintiff Notice of His Right to an Article 78 Proceeding Could Support a Claim for a Denial of Due Process

"Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, provides both a hearing and a means of redress for petitioners." *Hellenic Am. Neighborhood Action Comm.* v *City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996).

The Second Circuit has repeatedly held that Article 78 proceedings provide adequate post-deprivation remedies for denials of public benefits: "Our Court and others within the Circuit have held that the availability of post-deprivation Article 78 proceedings in the NYCERS pension context is generally constitutionally adequate process even where the process internal to NYCERS was not wholly adequate, or where the plaintiff failed to timely file an Article 78 complaint." *King* v. *N.Y.C. Emp. Ret. Sys.*, 595 F. App'x 10, 12 (2d Cir. 2014) (summary order); *see also N.Y.S. Nat'l Org. for Women* v. *Pataki*, 261 F.3d 156, 168-70 (2d Cir. 2001) (describing the powers of state courts in Article 78 proceedings and holding that they provide a meaningful pre-deprivation process).

However, Plaintiff correctly notes that the letter he received from NYCERS contained no reference to Article 78 proceedings or their availability as a mechanism for challenging the suspension of his pension benefits. (Pl. Opp. 7-8). Plaintiff argues that the existence of post-deprivation Article 78 proceedings cannot provide adequate process in a case where the plaintiff is uninformed as to this opportunity to seek redress. (*Id.*). The Court notes that the letter provided to Plaintiff informed him only that his pension benefits would be cut off if he failed to make the required payment. (NYCERS 9/14 Letter). On the current record, no communication informed Plaintiff that he had failed to do so, his benefits were suspended, and he could appeal the decision in court.

Defendants argue that "[w]hen NYCERS suspended plaintiff *pro se*'s pension payments beginning in November 2017, plaintiff *pro se* was unambiguously put on notice that NYCERS had issued a final decision and that all administrative appeals had been exhausted." (Def. Reply 6). The Court disagrees that the suspension of benefits itself provides notice to any individual that "administrative appeals ha[ve] been exhausted" or that they can pursue remedies elsewhere. NYCERS's first letter contained no mention of any decision or appeal rights; it merely informed Plaintiff of the deficit and suggested that he could engage in further communication with NYCERS. (NYCERS 9/14 Letter). Indeed, Plaintiff's attempts to engage in further communications with NYCERS personnel indicate that he did not understand his administrative appeals to be exhausted. (*See* Whinnery 3/31 Email). The suspension itself provided no information that would clarify the procedures available to Plaintiff.

Defendants also assert that Plaintiff's lack of awareness is irrelevant, as courts have not held that the state is required to inform individuals of the availability of Article 78 proceedings to challenge administrative action. (Def Br. 10 (citing *Vialez* v. *N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 121 (S.D.N.Y. 1991))). Defendants overstate the law on this subject. While the explicit notice of an Article 78 proceeding has not yet been held to be a requirement for the suspension of pension benefits, several cases have held that the failure to provide notice of available procedures in the context of public benefit denials raise constitutional concerns. In *McNair* v. *New York City Housing Authority*,

13

613 F. Supp. 910 (S.D.N.Y. 1985), a case brought by rejected applicants for public housing in the City challenging the New York City Housing Authority's denial notices, the court wrote that "the most egregious failing of the Authority's procedures [was] the inadequacy of notice of the opportunity for redress." *Id.* at 914. In *Morris* v. *New York City Employees' Retirement System*, 129 F. Supp. 2d 599 (S.D.N.Y. 2001), the Court held that NYCERS could not deem an applicant for disability to have waived his rights to Article 78 proceedings, where he had never been provided notice of said rights.

This Court finds that "the risk of an erroneous deprivation" of an individual's pension benefits may outweigh the administrative costs of requiring NYCERS to inform individuals of their right to seek judicial review. *See Mathews,* 424 U.S. at 335. In *McNair,* then-District Judge Leval addressed the failure of the City's Housing Authority to provide adequate notice and wrote, "it would cost virtually nothing to give applicants … clear advice of the procedures open to them to seek redress." Similarly, here, the cost to NYCERS of including language regarding the availability of Article 78 proceedings in its letters to individuals facing the suspension of pension benefits would be "virtually nothing." By contrast, individuals such as Plaintiff could face substantial hardship from the suspension of pension benefits. Even a small risk of erroneous deprivation in such a case would seem to outweigh the Government interest in maintaining existing procedures, which would seem to amount to avoiding the inconvenience of changing a form letter.

The Court concludes that Plaintiff has plausibly alleged that the failure to notify him of his right to seek an Article 78 review of the suspension of his pension benefits was a violation of his right to procedural due process, and, therefore, that NYCERS deprived him of due process under color of state law. Plaintiff's Section 1983 claim therefore continues against NYCERS.

## C. Plaintiff Has Failed to State a Section 1983 Claim Against Defendants Whinnery and Stringer

### 1. Section 1983 Liability for Individual Defendants

To review, Section 1983 establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt* v. *Cole*, 504 U.S. 158, 161 (1992) (citation omitted). As such, a "§ 1983 claim has two essential elements: [i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis* v. *County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see also City of Oklahoma City* v. *Tuttle*, 471 U.S. 808, 816 (1985) ("By its terms, of course, [42 U.S.C. § 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.").

As a prerequisite to an award of damages under Section 1983, a plaintiff must show the personal involvement of the defendants in the alleged constitutional deprivations. *See Farrell* v. *Burke*, 449 F.3d 470, 484 (2d Cir.

15

2006); *see generally Colon* v. *Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). To show personal involvement, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

### 2. Analysis

The Court finds that Plaintiff has failed to allege specific involvement in the alleged constitutional deprivations by Defendants Whinnery and Stringer. The Amended Complaint does not allege that Whinnery or Stringer played a role in the alleged deprivation. Plaintiff merely mentions the roles that they held at NYCERS, but makes no allegations about their participation in the suspension of Plaintiff's pension or in the procedures he received. (*See* Am. Compl. 1-2). Even in his opposition papers, Plaintiff does not add new facts that would suggest further involvement by these individuals. (Pl. Opp. 2).

The role that these two individuals played — as NYCERS Director and a Trustee on its board — cannot alone suffice to demonstrate their involvement in any unconstitutional procedure. "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black* v. *Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Plaintiff did attempt to contact Whinnery to remedy the suspension. (*See* Whinnery 3/31 Email). However, this contact occurred after the suspension of payments and corresponding deprivation of rights had already occurred.

Absent any direct personal involvement by Stringer and Whinnery in the suspension of Plaintiff's pension payments, the Section 1983 claims against them must be dismissed.

Furthermore, even if the Court were to consider such claims adequately alleged, the individual Defendants would be protected by qualified immunity. Government officials enjoy a qualified immunity that shields them from personal liability for damages under Section 1983 insofar as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or it was objectively reasonable for [him or her] to believe that [his or her] actions were lawful at the time of the challenged act." *Jenkins* v. *City of New York,* 478 F.3d 76, 87 (2d Cir. 2007) (citations and quotation marks omitted); *see also Caceres* v. *Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 622 (2d Cir. 2011). Insofar as the underlying constitutional violation is the absence of notice provided to Plaintiff of his right to an Article 78 proceeding, the Court could not find that such a right was clearly established. As Defendant correctly notes, NYCERS has not yet been required to provide such notices by any court or statute. (Def. Br. 10). Accordingly, the Section 1983 Claims against Whinnery and Stringer are dismissed.

**D.  Plaintiff Has Adequately Stated a Claim for Breach of Contract Against NYCERS, But the Court Dismisses His Breach of Fiduciary Duty Claim as Duplicative**

### a.  Applicable Law

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege [i] the existence of an agreement, [ii] adequate performance of the contract by the plaintiff, [iii] breach of contract by the defendant, and [ii] damages." *Harsco Corp.* v. *Segui*, 91 F.3d 337, 348 (2d Cir. 1996). And to prove a claim for breach of a fiduciary duty under New York law, a plaintiff must show: (i) breach by a fiduciary of a duty owed to plaintiff; (ii) defendant's knowing participation in the breach; and (iii) damages. *Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of America Secs., LLC*, 591 F. Supp. 2d 586, 590-91 (S.D.N.Y. 2008). However, under New York law, "a cause of action for breach of fiduciary duty that is merely duplicative of a breach of contract claim cannot stand." *Centro Empresarial Cempresa S.A.* v. *America Movil, S.A.B. de C.V.*, 901 N.Y.S.2d 618, 636 (1st Dep't 2010) (citing *Granirer* v. *Bakery, Inc.*, 863 N.Y.S.2d 396, 399 (1st Dep't 2008)).

### b.  Analysis

The parties' briefing on Plaintiff's state law claims is minimal.[3] Defendant asserts that these claims are properly handled through an Article 78 proceeding. (Def. Br. 15). However, given that the Court holds that NYCERS's

---

[3]  Plaintiff does not specify whether these state law claims are asserted against NYCERS alone or also against Defendants Whinnery and Stringer. The Court finds that, to the extent the claims are made against the individual Defendants, Plaintiff has failed to plead any personal involvement and thus the Court dismisses such claims. The Court analyzes the claims only against NYCERS.

failure to inform Plaintiff of his right to an Article 78 proceeding was a violation

of his rights, the Court cannot hold that Plaintiff waived these claims by failing

to pursue an Article 78 proceeding of which he was unaware. *See generally*

*Morris*, 129 F. Supp. 2d at 608-11.

In the alternative, Defendants argue that Plaintiff cannot bring a claim

for breach of contract, because Plaintiff fails to allege adequate performance of

his contract with NYCERS. (Def. Br. 15). Defendants state that Plaintiff failed

to offset the deficit in his MCAF, and this deficit still exists. Defendants argue

that they have provided Plaintiff with the previously withheld funds, and

therefore Plaintiff has no damages. (*Id.*). The Court disagrees and finds

Plaintiff has stated a claim for breach of contract.

In his Amended Complaint, Plaintiff provides only the threadbare

assertions of the elements of a breach of contract claim. (Am. Compl. § 3).

However, Plaintiff asserts throughout his opposition that the alleged deficit that

the City claimed never existed in the first place. (Pl. Opp. 14-15). What is

more, Plaintiff argues that NYCERS's actions in ultimately returning the funds

to him indicate an awareness on their part that the initial suspension was in

error. (*Id.* at 15-16). In light of the liberal pleading standards by which the

Court reviews the pleadings of *pro se* litigants, and considering Plaintiff's

opposition, the Court finds that Plaintiff has alleged that NYCERS violated his

pension contract, while he remained in compliance with his obligations. While

Plaintiff's damages may be minimal, given that NYCERS has now restored the

withheld funds, Plaintiff still alleges that he was deprived of needed funds for

several months.  The Court considers Plaintiff's claim for breach of contract to be alleged with sufficient particularity at this stage of the litigation.

However, the Court does not consider Plaintiff's claim for breach of fiduciary duty to state an independent claim.  "A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *William Kaufman Org., Ltd.* v. *Graham & James LLP*, 703 N.Y.S.2d 439, 442 (1st Dep't 2000).  Plaintiff does not assert that NYCERS's conduct breached a duty distinct from the breach of the retirement contract itself.  In Plaintiff's Amended Complaint, he himself refers to the claims as duplicative. (*See* Am. Compl. § IV ¶4 ("Not only is my relationship with NYCERS a contractual one, it also is a fiduciary relationship.  Both give rise to a cause of action for an accounting.")).  Given that both claims focus on NYCERS's failure to make what Plaintiff alleges are contractually required payments, the Court finds that the breach of fiduciary duty claim is duplicative and subject to dismissal.

## CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Plaintiff's claims against Defendants Whinnery and Stringer are dismissed, as is Plaintiff's claim for breach of fiduciary duty against all Defendants.  Plaintiff's Section 1983 claim against NYCERS for denial of due process survives, as does his claim against NYCERS for breach of contract.

The Clerk of Court is directed to terminate the motion at docket entry 22.

The parties are hereby ORDERED to submit a joint letter and proposed case management plan on or before **August 28, 2019**.

SO ORDERED.

Dated:    August 7, 2019
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
James Smalls
P.O. Box 101
Bronx, NY 10471