UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES SMALLS,

                    Plaintiff,

          -v.-

NEW YORK CITY EMPLOYEES' RETIREMENT
SYSTEM (NYCERS),

                    Defendant.

---

18 Civ. 5428 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff James Smalls, proceeding *pro se*, seeks redress of the temporary suspension of his pension benefits by Defendant New York City Employees' Retirement System ("NYCERS"). On March 11, 2020, the Court held a one-day bench trial to resolve the parties' remaining disputes concerning Plaintiff's procedural due process and breach of contract claims, at the conclusion of which it dismissed the latter. This Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52 on Plaintiff's procedural due process claim.

The Court has reviewed the parties' pre-trial submissions, the transcript of the trial, and the trial exhibits. The Court's review of these documents is enhanced by its own recollection of the trial. For the reasons that follow, the Court finds that Defendant is not liable for any violation of Plaintiff's procedural due process rights.

## PROCEDURAL HISTORY

Prior proceedings before this Court narrowed the issues in dispute at the bench trial.  Therefore, for completeness, the Court includes the relevant procedural history of the case.

Proceeding *pro se*, Plaintiff filed his Amended Complaint against Defendants NYCERS, NYCERS Executive Director Melanie Whinnery, and City Comptroller Scott M. Stringer on June 26, 2018.  (*See generally* Dkt. #3).  Plaintiff asserted that the temporary suspension of his pension payments constituted: (i) a violation of his right to due process under the Fourteenth Amendment of the federal Constitution and Article I § 6 of the New York Constitution; (ii) a breach of contract; and (iii) a breach of fiduciary duty.  (*See id.* at 8, 13-14).  Insofar as Plaintiff brought claims against Defendants for violation of his federal constitutional rights, the Court construed these claims as brought under 42 U.S.C. § 1983.

On November 15, 2018, Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. #22-24).  On August 7, 2019, the Court granted in part and denied in part Defendants' motion to dismiss.  *See Smalls* v. *N.Y.C. Emps. Ret. Sys.*, No. 18 Civ. 5428 (KPF), 2019 WL 3716444, at *9 (S.D.N.Y. Aug. 7, 2019) ("*Smalls I*").  The Court dismissed Plaintiff's claims against individual Defendants Whinnery and Stringer, as well as the breach of fiduciary duty claim against all Defendants. *Id.*  However, Plaintiff's claims against NYCERS for denial of procedural due process and breach of contract survived.  *Id.*  Thus, NYCERS was the sole

remaining Defendant.  Following the resolution of Defendants' motion to dismiss, the parties commenced discovery.  (Dkt. #35-38).

In a January 10, 2020 pretrial conference, the Court scheduled a date and time for the bench trial between Plaintiff and Defendant NYCERS.  (Dkt. #39).  The Court also ordered the parties' Joint Pretrial Order, motions *in limine*, and any pretrial memoranda of law to be due by February 12, 2020. (*Id.*).

After the Court scheduled a bench trial with the parties, Plaintiff moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on February 11, 2020.  (Dkt. #45).  On February 13, 2020, the Court denied Plaintiff's application for summary judgment because the parties would argue the very issues he raised at the scheduled bench trial.  (Dkt. #46).

On February 14, 2020, Defendant submitted a pretrial letter, which included: (i) a Joint Pretrial Order; (ii) Defendant's motion *in limine*; (iii) Defendant's pretrial memorandum of law; and (iv) Defendant's Proposed Findings of Fact and Conclusions of Law.  (Dkt. #52-54).  In the letter, Defendant expressed its inability to obtain Plaintiff's input on the Joint Pretrial Order.  (Dkt. #54).  Defendant further attached email correspondence with Plaintiff showing that, in lieu of contributing to the Joint Pretrial Order, Plaintiff had written to Defendant, "I assert summary judgment FTC 56."  (*Id.*). Since the Court had already denied Plaintiff's motion for summary judgment, the Court reminded Plaintiff that he must comply with the Court's Order

requiring the submission of a Joint Pretrial Order, motions *in limine*, and any other pretrial memoranda of law.  (Dkt. #54).

On February 27, 2020, the parties appeared before the Court for a final pretrial conference.  (*See generally* Dkt. #65 ("Feb. 27 Tr.")).  On March 5, 2020, the Court received Plaintiff's second Proposed Joint Pretrial Order.  (Dkt. #62).  The Court admitted the majority of Plaintiff's exhibits into evidence, while it noted that almost all of the documents were duplicative of Defendant's exhibits.  (*Id.*).[1]

Plaintiff failed to submit an affidavit of direct testimony in advance of the bench trial in this action, despite such an affidavit being required by Rule 7(C)(i) of this Court's Individual Rules of Practice in Civil Cases.  The Court reminded Plaintiff of this requirement on several occasions.  (*See, e.g.*, Dkt. #39; Dkt. #54; Feb. 27 Tr. 5:1-18).  In light of Plaintiff's *pro se* status, the Court granted Plaintiff two extensions to submit his direct testimony affidavit by March 6, 2020.  (Dkt. #54; Feb. 27 Tr. 34:9-15).  However, by March 9, 2020, less than 48 hours before the bench trial, Plaintiff was unable to meet his deadline.  (Dkt. #63).  Defendant requested to preclude any direct testimony by Plaintiff at trial.  (Dkt. #63).  Given Plaintiff's inability to provide any justification for his failure to submit an affidavit of direct testimony and the substantial prejudice that Defendant would have suffered if Plaintiff had been

---

[1]     The Court admitted into evidence Plaintiff's proposed Exhibits 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 28, and 32, but did not admit Exhibits 15 through 19 because of incompleteness. (Dkt. #62).  The Court instead allowed admission of the entire documents to which the proposed exhibits belonged.  (*Id.*).  Finally, the Court did not admit Exhibits 29, 30, and 31, as the Court did not deem those proposed exhibits to be either proper evidence or relevant.  (*Id.*).

allowed to provide direct testimony at such a late juncture, the Court granted Defendant's request and precluded Plaintiff from offering any direct testimony at trial. (Dkt. #64).

The bench trial for this action was held on March 11, 2020. (Minute Entry for March 11, 2020). Given the preclusion of any direct testimony from Plaintiff, the Court solely reviewed documentary evidence and did not hear from any live witnesses. (Dkt. #67 ("Trial Tr.") at 22:13-21). At the conclusion of trial, Defendant moved pursuant to Federal Rule of Civil Procedure 50 for Judgment as a Matter of Law as to the remaining due process and breach of contract claims. (*Id.* at 41:2-3). The Court denied Defendant's motion as to the due process claim because the Court determined that it needed to consider the legal questions implicated by the claim more fully before rendering a decision. (*Id.* at 48:8-22). However, the Court granted Defendant's motion as to the breach of contract claim, finding that Plaintiff had failed to offer any evidence of damages. (*Id.* at 48:23-49:21).

The Court asked the parties if they had further materials they wished to submit regarding the due process claim, and the parties advised the Court that they had no further arguments. (Trial Tr. 51:10-52:1). The Court therefore closed the record and informed the parties that it would decide the due process claim at an appropriate time. (*Id.* at 52:2-3). The Court has now fully considered the parties' arguments regarding the remaining due process claim and is prepared to issue its decision as to whether Defendant violated Plaintiff's procedural due process rights.

5

## FINDINGS OF FACT[2]

Defendant is the administrator of the New York City Employees'
Retirement System Pension Plan, which offers retirement plans for public
sector employees.  (Pl. Ex. 32 at 1).  Other than retirement plans, Defendant
also offers disability benefits, death benefits, and loans to its members.  (*Id.* at
1-2).  Plaintiff is a former employee of the New York City Transit Authority.  (*Id.*
at 4).  Plaintiff was a city employee from November 7, 1988, until June 6, 2006.
(*Id.*).  Plaintiff became a NYCERS member on November 10, 1988.  (*Id.*).

Over the course of his time as a NYCERS member, Plaintiff fell into a
state of deficiency for two reasons.  *First*, Plaintiff applied for and received
several loans from NYCERS during his time as a city employee.  (*See* Def.
Ex. E-Q; Pl. Ex. 32 at 4-5).  All such loans were drawn against Plaintiff's
Member Contribution Accumulation Fund ("MCAF"), the account into which
city employees are required to make contributions from payroll.  (Pl. Ex. 32 at
2, 4-5).  Under the terms governing NYCERS's loans, a loan cannot exceed 75%
of a member's MCAF balance.  (*See* Def. Ex. K).  Moreover, failure to repay a
NYCERS loan results in the member's retirement allowance being reduced
according to the outstanding loan balance upon retirement.  (*See id.*).  Plaintiff
failed to pay a NYCERS loan that he applied for and received on May 28, 2005

---

[2]    Given that only the procedural due process claim remains, and that the facts of this
case are undisputed, this Opinion relies on and cites to a limited universe of materials
that were admitted into evidence at trial.  Specifically, this Opinion relies on and cites to
the various exhibits Defendant submitted to the Court for trial ("Def. Ex. [ ]") and the
Affidavit of Mr. Timothy Boos, which Plaintiff entered into evidence ("Pl. Ex. 32").  Where
appropriate, the Court also cites to Defendant's pretrial memorandum of law ("Def. Br."
(Dkt. #52)) and Plaintiff's pretrial memorandum of law ("Pl. Br." (Dkt. #60)).

(*see* Def. Ex. Q), and as a result he had a loan overage of $2,780.70 at the time of his retirement (Pl. Ex. 32 at 7).  *Second*, despite Plaintiff's need to pay a portion of his gross income into his MCAF (Pl. Ex. 32 at 2), Plaintiff failed to contribute the amounts required between August 15, 2002, and January 14, 2003 (*id.* at 5).  As a result, at the time of his retirement Plaintiff had an MCAF deficit of $674.32.  (*See* Def. Ex. U).  Plaintiff's loan overage and MCAF deficit totaled $3,455.03.  (*See id.*).

On January 13, 2017, Plaintiff informed NYCERS by letter that he intended to file for receipt of his vested retirement benefit.  (Pl. Ex. 32 at 6). Plaintiff's letter prompted Defendant to begin calculating Plaintiff's retirement options.  (*Id.*).  In the course of this calculation, NYCERS noted both the loan overage and the MCAF deficit.  (*Id.*).  On September 14, 2017, NYCERS informed Plaintiff by letter (the "Letter") of his total deficiency of $3,455.03 as a result of the loan overage and failure to pay into his MCAF.  (*See* Def. Ex. U). The Letter read, in relevant part:

> The New York City Employees' Retirement System (NYCERS) recently conducted a review of your account which revealed a deficit of your Member Contribution Accumulation Fund (MCAF) and an outstanding pension loan at retirement that exceeded 75% of the amount required in your MCAF.  By law, an outstanding pension loan cannot exceed 75% of the MCAF.
>
> At retirement, your requirement MCAF amount is $55,171.16.  Your actual MCAF balance at retirement is $54,496.84.  The difference between the required and actual MCAF balance resulted in a deficit of $674.32. In addition, the maximum outstanding loan balance you are allowed is $24,310.45, which is 75% of your required MCAF of $32,413.93.  Your actual outstanding loan balance at retirement was $27,091.16, which is

$2,780.71 more than the maximum allowed by law. **You must pay the lump-sum amount of $3,455.03 to reduce the loan balance to the amount legally permitted** ....

**If you fail to pay the above amount within 20 days from the date of this letter, your advance pension payments will be suspended and the process of revising your retirement allowance will be delayed.**

If you need further assistance, please contact our Call Center at (347) 643-3000 or visit our Customer Service Center at 340 Jay Street, Brooklyn, NY 11201.

(*Id.* (emphasis in original)).  Of potential significance to the Court's due process analysis, Defendant's Letter did not inform Plaintiff that he had the right to challenge any suspension of his benefits through a New York State Article 78 proceeding.  (*See id.*).  Plaintiff chose neither to contact Defendant to discuss his deficiency or to pay the amount required.  (Pl. Ex. 32 at 7).  His pension payments were subsequently suspended in November 2017.  (*Id.*).  However, based on an agreement executed between the parties, the suspension of Plaintiff's pension payments was lifted on May 10, 2018, and Plaintiff received all pension payments that were outstanding from the interim period.  (*Id.* at 8).

## CONCLUSIONS OF LAW

Based on the foregoing facts, Plaintiff argues that Defendant deprived him of the rights and privileges guaranteed both by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by the New York State Constitution.  (*See* Pl. Br. 8).  Specifically, Plaintiff asserts that NYCERS failed to provide explicit notice of his right to judicial review under New York's Civil Practice Law and Rules (N.Y. C.P.L.R.) §§ 7801-7806 ("Article

78"). (*See id.*).  For the reasons that follow, the Court now concludes that Defendant's failure to inform Plaintiff of his right to an Article 78 proceeding did not constitute a violation of procedural due process because Defendant had no such affirmative obligation to inform.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause thus bars arbitrary government action, and guarantees procedural fairness when a state action deprives a citizen of a protected interest in life, liberty, or property.  *See Daniels* v. *Williams*, 474 U.S. 327, 331 (1986).  "The fundamental requirement of the Due Process Clause is that an individual be given the opportunity to be heard at 'a meaningful time and in a meaningful manner.'"  *Patterson* v. *City of Utica*, 370 F.3d 322, 336 (2d Cir. 2004) (quoting *Goldberg* v. *Kelly*, 397 U.S. 254, 267 (1970)).

To assert a violation of procedural due process, Plaintiff must satisfy three elements: "*first* identify a property right, *second* show that the government has deprived him of that right, and *third* show that the deprivation was effected without due process."  *Ahmed* v. *Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (emphasis added) (citing *Local 342, Long Island Pub. Serv. Emps.* v. *Town Bd.*, 31 F.3d 1191, 1194 (2d Cir. 1994)).  The Court has previously found — and Defendant does not contest — that "Plaintiff held a property interest in his continued pension payments" and "suffered a deprivation for the months in which he received no payment."  *Smalls I*, 2019

9

WL 3716444, at *4.  Therefore, the only question the Court need answer to resolve this action is whether Defendant violated Plaintiff's procedural due process rights in its suspension of payments.

The short answer is that no violation of procedural due process has occurred.  It is well settled in the Second Circuit that a party's ability to avail himself of Article 78 — a process by which "New York state courts are empowered to issue 'common law writs of certiorari to review, mandamus, and prohibition'" against state agencies and officers, *N.Y. State Nat'l Org. of Women* v. *Pataki*, 261 F.3d 156, 168 (2d Cir. 2001) (quoting *Hellenic Am. Neighborhood Action Comm.* v. *City of New York*, 101 F.3d 877, 881 (2d Cir. 1996)); N.Y. C.P.L.R. §§ 7801-7802 — provides constitutionally adequate process in the NYCERS pension context, *see, e.g.*, *King* v. *N.Y.C. Emps. Ret. Sys.*, 595 F. App'x 10, 12 (2d Cir. 2014) (summary order).

Plaintiff, however, argues that the existence of an Article 78 proceeding is insufficient process, and instead that Defendant had an obligation to inform him of his right to such a proceeding.  (*See* Pl. Br. 8).  In this Court's Opinion regarding the prior motion to dismiss, the Court left open the door to the possibility that such an obligation may exist in order for due process to be satisfied.  *See Smalls I*, 2019 WL 3716444, at *6-7.  However, upon further review of the case law, the Court now closes that door, for it is clear that no such obligation exists.  The Supreme Court has held that due process does not require "individualized notice of state-law remedies which … are established by published, generally available state statutes and case law."  *City of W. Covina* v.

10

*Perkins*, 525 U.S. 234, 241 (1999).  Once a deprivation has occurred, a plaintiff "can turn to these public sources to learn about the remedial procedures available to him.  The City need not take other steps to inform him of his options."  *Id.*  Moreover, in reliance on *West Covina*, the Second Circuit confirmed just last month "that the federal procedural due process guarantee does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law."  *Liberian Cmty. Ass'n* v. *Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) (emphasis in original).

Given such strong binding authority, the Court cannot find that due process required Defendant to inform Plaintiff of his right to an Article 78 proceeding.  This conclusion is only reinforced by the paucity of case law supporting such an affirmative obligation.  Only two cases — *McNair* v. *N.Y.C. Hous. Auth.*, 613 F. Supp. 910 (S.D.N.Y. 1985), and *Morris* v. *N.Y.C. Emps. Ret. Sys.*, 129 F. Supp. 2d 599 (S.D.N.Y. 2001) — come close to suggesting such an obligation, but neither is helpful to Plaintiff.  *McNair* cannot support Plaintiff's argument, both because its holding relied on statutory, not constitutional, grounds, *see* 613 F. Supp. at 916, and because any such reasoning based on due process would have been overruled by *West Covina*.

*Morris* comes closer to hitting the mark, but that case is factually distinct from the one before this Court.  In that case, the plaintiff received a letter from NYCERS informing him that he could appeal NYCERS's denial of disability benefits to a Special Medical Review Committee.  *See Morris*, 129 F. Supp. 2d at 602.  However, the letter both induced the plaintiff to sign a waiver of his

11

right to seek review of his denial of benefits by any other means, and informed him that the Committee's recommendation would be "final and conclusive." *See id.* at 602-03.  Nowhere did NYCERS inform the plaintiff that he had the right to an Article 78 proceeding, and that his execution of the waiver would preclude him from exercising said right.  Given NYCERS's misleading communication, the court found that NYCERS could not seek the plaintiff's waiver of his appellate rights without notifying him of what he was in fact waiving.  *See id.* at 611.

The Court fully endorses the central finding of *Morris* and agrees that NYCERS may not mislead or deceive individuals into surrendering their legal rights.  However, there was no deception or misrepresentation in the Letter to Plaintiff.  There was only an omission of information — an omission that both the Supreme Court and the Second Circuit have sanctioned.  *See W. Covina*, 525 U.S. at 241; *Liberian Cmty. Ass'n*, 970 F.3d at 192.  There is therefore no basis for a finding that due process compelled Defendant to advise Plaintiff of his right to an Article 78 proceeding.[3]  Plaintiff's procedural due process claim fails, and this action is thus resolved.[4]

---

[3]  Plaintiff also attempts to argue that because Defendant has previously informed at least one other individual of her right to an Article 78 proceeding, due process now requires that Defendant follow that same course of action in every other instance.  (*See* Pl. Br. 5 (citing *Martin* v. *N.Y.C. Emps. Ret. Sys. (NYCERS)*, 58 Misc. 3d 1208(A), at *2 (N.Y. Sup. Ct. Jan. 8, 2018))).  However, there is no authority supporting the idea that a state actor can create a constitutional entitlement through an isolated act.  *Cf. Allen* v. *Cuomo*, 100 F.3d 253, 261 (noting that "[a] constitutional entitlement cannot 'be created … merely because a wholly and expressly discretionary state privilege has been granted generously in the past.'" (quoting *Conn. Bd. of Pardons* v. *Dumschat*, 452 U.S. 458, 465 (1981)).

[4]  Plaintiff's due process claim under the New York Constitution equally fails, as "[t]he due process guarantees of the New York Constitution have been interpreted by New York

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED, ADJUDGED, and DECREED THAT Defendant shall have judgment in this action.  The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated:        September 15, 2020
              New York, New York

_____
       KATHERINE POLK FAILLA
       United States District Judge


*Sent by First Class Mail to:*
James Smalls
P.O. Box 101
Bronx, NY 10471

---

courts generally to be coextensive with federal due process protections." *DeMartino* v. *N.Y. State Dep't of Labor*, 167 F. Supp. 3d 342, 373-74 (S.D.N.Y. 2016) (citing *Oneida Indian Nation of N.Y.* v. *Madison Cty.*, 665 F.3d 408, 427 n.13 (2d Cir. 2011)).